IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| JEC Consulting & Trading, Inc., | ) | C.A. No. 3:05-2295-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING MOTION |
| | ) | TO DISMISS OR TRANSFER |
| Diversified Foods, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Alternatively, Defendant seeks a transfer pursuant to 28 U.S.C. § 1404. The court denies the motion in both respects.

**I. BACKGROUND**

This dispute arises out of a business relationship between Plaintiff, JEC Consulting & Trading, Inc. ("JEC"), and Defendant, Diversified Foods, Inc. ("Diversified"). The relationship began in 1998 and ended in 2005. It appears to be undisputed that there is no contract or similar written agreement which sets out the terms of the relationship.

Diversified characterizes the relationship between the parties as a "sales agency relationship," with JEC being limited to marketing to "a finite number of designated customers, none of which were located in the State of South Carolina." Dkt No. 10-1 at 2-3. JEC, by contrast, characterizes the relationship as a joint venture in which JEC was primarily responsible for all marketing, including to South Carolina customers. Dkt No. 14-1 at 3-4 & 7. While Diversified challenges JEC's characterization of the relationship, it concedes that the court must view the facts and draw reasonable inferences in JEC's favor for purposes of this motion. Dkt No. 15.

At all times relevant to this action, Diversified was a Louisiana corporation operating primarily out of a Louisiana facility. At the time the business relationship began in 1998, JEC was based in Florida. In or around 2001, JEC moved its primary location to Columbia, South Carolina. Diversified was not involved in JEC's decision to relocate. Nonetheless, the business relationship continued after JEC's move, with numerous business communications being exchanged on a regular basis between JEC personnel in South Carolina and Diversified personnel in Louisiana. Indeed, there is evidence that the relationship expanded after JEC's move to South Carolina. There is also evidence that JEC paid some expenses and had duties relative to its relationship with Diversified which were not limited purely to marketing.

In 2003, Diversified prepared a brochure describing its relationship with JEC. The brochure was intended for the purpose of explaining the JEC-Diversified relationship to third parties for the further purpose of increasing JEC and Diversified's mutual business interests. Dkt No. 14-3.[1]

The cover page of the brochure identifies only Diversified. The first paragraph introduces Diversified and the next introduces JEC. The brochure then explains the parties' joint role:

> Combined, our companies have more than 20 years experience in the aseptic milk/juice business. In 1998, Diversified Foods, Inc. and JEC Consulting & Trading decided to *combine their strengths* to expand the aseptic milk/juice business. *We acquired the rights* to sell and market the Borden brand of aseptic milk *and are successfully expanding distribution* throughout the United States and the Caribbean.
>
> *Our office* in New Orleans, LA handles all logistics and administrative areas of the business. *The office in Columbia, SC is responsible for sales and marketing* of all manufacturers products. *We* have knowledge and expertise to represent a manufacturer as its marketing company.

Brochure (emphasis added).

---

[1] This information is as presented by JEC. It is not, however, challenged by Diversified which did not address the brochure in its reply.

2

While these two paragraphs do not distinguish between JEC and Diversified, subsequent paragraphs refer specifically to Diversified's business lines. These paragraphs are followed by the statement: "Through our manufacturing partnerships and *joint venture operations,* we are able to supply a variety of custom manufactured products. Today . . . our custom manufacturing includes products for: Borden (Aseptic Milk) . . . ." The final page of the brochure provides a Columbia, South Carolina address for JEC and a New Orleans, Louisiana address for Diversified.

## II. MOTION TO DISMISS

### A. STANDARD

The burden is on the party seeking to assert jurisdiction over a foreign defendant to establish facts sufficient to support the exercise of personal jurisdiction. *Young v. F.D.I.C.,* 103 F.3d 1180, 1191 (4th Cir. 1997). Nonetheless, when a challenge to personal jurisdiction is based upon written materials and the matter is resolved without an evidentiary hearing, "plaintiff need prove only a *prima facie* case of personal jurisdiction." *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In resolving the motion under these circumstances, the "court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.* Personal jurisdiction over a foreign defendant may be either specific or general. *Fed. Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir. 1989). The exercise of specific jurisdiction is warranted when the claims arise out of defendant's activities within the forum state. *Id.* General jurisdiction, on the other hand, requires a continuous presence within the forum state but applies even when the claim is unrelated to defendant's activities within that state. *Id.*

The specific jurisdiction analysis involves a two-step inquiry: (1) whether the state long-arm statute authorizes the exercise of personal jurisdiction over the foreign defendant; and (2) whether the exercise of personal jurisdiction over the foreign defendant comports with constitutional due process standards. *Young*, 103 F.3d at 1191. However, because South Carolina's long-arm statute extends to the limits of constitutional due process, the two steps collapse into a constitutional due process analysis. *Id.*

The due process analysis looks to whether defendant has sufficient minimum contacts with the forum state that the exercise of jurisdiction would "'not offend traditional notions of fair play and substantial justice.'" *Young,* 103 F.3d at 1191 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980)). To be sufficient, minimum contacts must be contacts which defendant has purposely directed toward the forum state. *Id.* "[W]here the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985) (internal citations omitted).

**B.      DISCUSSION**

The evidence proffered by Plaintiff supports the conclusions that: (1) Defendant availed itself of the benefit of doing business in and with a resident of South Carolina; (2) this business was substantial and ongoing; and (3) the claims arise out of that relationship. For purposes of this discussion, the court has assumed without deciding that an ongoing business relationship with a sales agent who voluntarily moves his base of operations into the forum state would not support specific jurisdiction. Here, however, there is evidence that the relationship between JEC and Diversified was

far more extensive than that of a "sales agent" and represented distributor. Moreover, there is evidence that the relationship not only continued but that the resulting business increased after JEC moved its base into South Carolina.

The most critical evidence, however, is that Diversified created a brochure in 2003, after JEC moved to South Carolina, holding out to third parties that JEC and Diversified had a substantial ongoing business relationship. While it may not mandate this conclusion, the brochure is certainly consistent with JEC's claim that the parties were engaged in a joint venture. Moreover, the brochure suggests that this joint venture had offices in both South Carolina and Louisiana. While the South Carolina office is ultimately linked specifically to JEC, the initial reference to the dual office locations in a paragraph referring to the joint operations and using words like "we" and "our" suggests that Diversified sought to benefit from the claim of a connection with South Carolina.

The creation of this brochure for the purpose of distribution to third parties is, therefore, reasonably viewed as an affirmative act of affiliation with a South Carolina entity. This affirmative act distinguishes this case from those in which a contracting party unilaterally relocates to the forum state after the contract is signed or relationship formed. Moreover, this court finds it sufficient to establish a *prima facie* case that Diversified deliberately "created 'continuing obligations' between [it]self and residents of the forum." *Burger King Corp.*, 471 U.S. at 475-76.

The court, therefore, concludes that the evidence is sufficient to support the exercise of specific jurisdiction over claims relating to the relationship between JEC and Diversified. The court need not, therefore, address whether the requirements for general jurisdiction are satisfied.

### III. MOTION TO CHANGE VENUE

A.   42 U.S.C. § 1406(a)

Pursuant to 42 U.S.C. § 1406(a), a district court may transfer an action filed in a district where venue is not proper to one where venue is proper. This section has been interpreted to allow transfer where "venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward" in the district in which originally filed. *Carefirst of Maryland, Inc. v. Carefirst Urgent Care Center, LLC,* 305 F.3d 253, 255-56 (4th Cir. 2002).

Defendant's argument for transfer pursuant to 42 U.S.C. § 1406(a) rests on the assumption that this court cannot exercise personal jurisdiction over Diversified. This aspect of the motion to transfer venue is denied for the same reasons that the motion to dismiss is denied.

B.   42 U.S.C. § 1404(a)

Even where venue and jurisdiction are proper, "a district court may transfer any civil action to any other district or division where it might have been brought" if such transfer will promote the "convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a).

> To prevail on a motion to change venue pursuant to § 1404, the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice. . . Deciding whether an action should be transferred requires the court to balance the relative convenience of the district in which the action was filed with the convenience of the proposed transferee district. In making the determination . . . the plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the movant.

*Figgie Intern., Inc. v. Destileria Serralles, Inc.,* 925 F. Supp. 411 (D.S.C.1996) (internal citations and quotation marks omitted).

As between the parties, the balance of convenience appears roughly equal. One party or the other and that party's witnesses will be inconvenienced by litigation in the other party's forum of choice. There is, therefore, no reason to override the Plaintiff's choice of forum based on the convenience of the parties or witnesses. Neither does it appear that the Eastern District of Louisiana would be in a better position than this court to resolve the matter. If this factor weighs in favor of either side, it is against transfer as the devastation wrought on New Orleans and surrounding areas by Hurricanes Katrina and Rita has placed and will continue to place unique burdens on the Eastern District of Louisiana.

## CONCLUSION

For the reasons set forth above, the court denies the motion to dismiss or transfer. This matter shall proceed in this district.

IT IS SO ORDERED.

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 13, 2005

C:\temp\notesB0AA3C\05-2295 jec v diversified mo to dismiss 12(b)(2).wpd